**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**CASSANDRA NICOLE HINKLE,**

    Plaintiff,

**v.**                                              **CIVIL ACTION NO.: 3:14-CV-41
(GROH)**

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull. Magistrate Judge Kaull issued his R&R, [ECF 16], on September 18, 2014. In the R&R, Magistrate Judge Kaull recommends the Court grant the Defendant's Motion for Summary Judgment, [ECF 14], because substantial evidence supported the Administrative Law Judge's ("ALJ") denial of the Plaintiff's application for supplement security income benefits. Magistrate Judge Kaull further recommends the Court deny the Plaintiff's Motion for Summary Judgment, [ECF 13], and that this case be dismissed with prejudice.

### I. Background

The Plaintiff filed her initial application for supplemental security income benefits on January 20, 2011, alleging disability beginning on September 30, 2009. Her alleged disability was due to severe depression, anxiety, diabetes, a seizure disorder and other ailments. Her claim was denied on May 12, 2011, and again upon reconsideration on July 8, 2011. After the Plaintiff filed a written request for an administrative hearing, a hearing was held on July 12, 2012, before ALJ Karl Alexander. ALJ Alexander issued his decision

denying the Plaintiff's claim on August 28, 2012. The appeals council denied review of the Plaintiff's claim on February 26, 2014.

The Plaintiff filed her complaint in the instant civil action on April 22, 2014. On August 6, 2014, she filed a motion for summary judgment. The Defendant filed its cross-motion for summary judgment on September 4, 2014. Magistrate Judge Kaull issued his R&R on September 18, 2014. Magistrate Judge Kaull recommends the Court grant the Defendant's motion for summary judgment, deny the Plaintiff's motion for summary judgment and dismiss this case with prejudice.

The Plaintiff timely filed her objections to the R&R on October 1, 2014. The Plaintiff objects to Magistrate Judge Kaull's finding that the ALJ's decision was supported by substantial evidence. Specifically, the Plaintiff argues that the ALJ improperly determined that the Plaintiff's impairments did not meet the criteria of "listing 12.05C." The Plaintiff avers that Magistrate Judge Kaull's R&R was based upon a "search of the record and supplying additional [rationale] that the ALJ himself did not articulate." She maintains that the R&R relies on portions of the administrative record that the ALJ did not mention in his decision, stating, "It is not clear from the ALJ's decision what [his] rationale was in this case," and therefore "[t]he court should not substitute its findings for those lacking in the ALJ's decision."

## II. Standards of Review

### A.    Review of the R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review *de novo* those portions of the magistrate judge's findings to which the Plaintiff objects. However, failure to file objections permits the district court to review the R&R under the standards that the district

court believes are appropriate, and if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Therefore, this Court will conduct a *de novo* review only as to those portions of the R&R to which the Plaintiff objects and will review the remaining portions of the R&R for clear error.

### B. Review of the ALJ Decision

The Social Security Act limits this Court's review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Perales, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").

**C.   Evaluation Process**

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation process.  20 C.F.R. § 404.1520(a)(4).  If the ALJ finds the claimant is disabled or not disabled at a certain step, the ALJ does not proceed to the next step.  Id.  The steps are as follows:

> Step One: Determine whether the claimant is engaging in substantial gainful activity;
>
> Step Two: Determine whether the claimant has a severe impairment;
>
> Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;
>
> Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

Here, under the five-step process, the ALJ found that the Plaintiff had a number of severe impairments, but that she did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At issue in the instant case is the ALJ's determination that the Plaintiff failed to meet the criteria of paragraph C of listing 12.05, concerning intellectual disability.  Because the parties have not presented argument concerning the Plaintiff's physical limitations, the Court focuses on the Plaintiff's mental limitations for purposes of this Order.

## III. Discussion

Upon careful consideration of the record, the parties' motions and the R&R, the Court finds Magistrate Judge Kaull committed no clear error with regard to the portions of the R&R to which the Plaintiff does not object. Furthermore, the Court finds the ALJ's determination that the Plaintiff's impairments did not meet the criteria of listing 12.05C was supported by substantial evidence.

As detailed above, in making his determination the ALJ followed a five-step evaluation process. At the third step of this process, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the ALJ had determined that the Plaintiff suffered from an impairment that met or equaled one of those listings, then the he would have found that the Plaintiff was disabled. See 20 C.F.R. § 416.920(a)(4)(iii).

Listing 12.05 provides as follows: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Subpart C of listing 12.05 contains two requirements: "A valid verbal, performance, or full scale IQ [intelligence quotient] of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The Fourth Circuit has interpreted listing 12.05C as containing three distinct requirements, or prongs, that must be met before a plaintiff can prevail. Hancock v. Astrue,

5

667 F.3d 470, 473 (4th Cir. 2012). Accordingly, the first prong of listing 12.05, sometimes referred to as the listing's threshold requirement, "requires a showing of deficits in adaptive functioning initially manifested during the developmental period." Id. (internal quotation marks omitted). This prong requires a finding of deficits in adaptive functioning generally and also a finding that the deficiency manifested itself during the developmental period, i.e., before the claimant reached twenty-two years of age. Id. at 475 (describing the "two components" of the first prong). The second prong requires "[a] valid verbal, performance, or full scale IQ of 60 through 70." Id. at 473. The third prong requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A plaintiff can prevail only by establishing that all three prongs have been satisfied. Id. at 475.

Here, the parties do not contest issues relating to the third prong of a listing 12.05C analysis. At issue are the first prong, requiring a showing of the Plaintiff's deficits in adaptive functioning, and the second prong, requiring a showing of a valid IQ of 60 through 70. As an initial matter, the Court disagrees with the Plaintiff's contention that the magistrate judge "supplied *post hoc* rationale that the ALJ did not provide" in order to support the ALJ's decision. The Plaintiff argues that it is not clear from the ALJ's decision what his rationale was in reaching his conclusions. To the contrary, as detailed below, the ALJ's decision contained a sufficient discussion of the pertinent evidence from the administrative record. The fact that the magistrate judge also conducted a thorough review of the record–undertaken in order to determine whether the ALJ's decision was supported by substantial evidence–does not mean that the R&R was improper, and it does not establish that the ALJ's decision was not based upon substantial evidence. "While the

Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based,' 42 U.S.C. § 405(b)(1), 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

In Hancock, the Fourth Circuit Court of Appeals, faced with facts similar to those in the instant case, held that "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." 667 F.3d at 474. The Hancock court reviewed an ALJ's decision to discredit a claimant's IQ scores based upon an examiner's failure to attest to the validity of the scores, and also "the results' inconsistency with both the claimant's actual functioning and with the notes of treating psychiatrists." Id. at 475. The court concluded that "the evidence considered by the ALJ provides sufficient support for the ALJ's rejection of the IQ scores." Id.

In certain instances, it is error for an ALJ to reject IQ scores demonstrating mental retardation when other portions of the record also support such a finding. Rineholt v. Astrue, 617 F. Supp. 2d 733, 744 (E.D. Tenn. 2009). Where multiple IQ scores are derived from a test, "the lowest of these is to be used in conjunction" with listing 12.05. Rainey v. Heckler, 770 F.2d 408, 410-11 (4th Cir. 1985). However, the Fourth Circuit in Hancock expressly stated that "certain circumstances permit an ALJ to discredit an IQ score." 667 F.3d at 474. For the most part, the circumstances the Fourth Circuit identified in Hancock are present in this case. Unlike in Hancock, both examiners in the instant case provided opinions as to the validity of the Plaintiff's IQ scores. But just as in Hancock, there

7

is sufficient evidence in the record from which the ALJ could determine that the Plaintiff's scores were inconsistent with another test result, with the Plaintiff's actual functioning and with the notes of her treating psychiatrists. See id. at 475.

The record contains the results of multiple personality and intelligence tests administered by professionals who treated the Plaintiff. The Plaintiff argues that two of these tests constitute "[a] valid verbal, performance, or full scale IQ of 60 through 70" under listing 12.05C. One test was administered by Dr. Thomas Stein. The results of that test are found in a report prepared by Dr. Stein in May of 2010. Dr. Stein administered the Wechsler Adult Intelligence Scale intellectual assessment, Third Edition, on which the Plaintiff received a "Verbal IQ" score of 74, a "Performance IQ" score of 64 and a "Full Scale IQ" score of 67. Accordingly, based upon these results, it appeared that the Plaintiff's IQ scores satisfied the second prong of listing 12.05C. However, upon considering the entirety of the record–including other evidence found in Dr. Stein's report–the ALJ determined that the Plaintiff's IQ scores were not valid, and thus did not meet the listing 12.05C requirements.

In the sections of his report concerning the internal and external validity of the test, Dr. Stein wrote, "I feel we had good internal validity" and "[t]here is good external validity." However, in the section on overall validity, Dr. Stein wrote, "While the IQ Full Scale score of 67 would suggest mild mental retardation, I think a more accurate interpretation of this is that she functions within the borderline range of intelligence."

In April of 2010, Dr. Allan L. LaVoie administered the Wechsler Abbreviated Scale of Intelligence test, with similar results. The Plaintiff received a full score of 62, placing her in the first percentile and within the range of mild mental retardation. Dr. LaVoie noted that

the Plaintiff "made what seemed to be a good effort, and the results are believed to provide a valid estimate of current functioning." However, Dr. LaVoie also administered the Wide Range Achievement Test 4 ("WRAT-4"), on which the Plaintiff's scores were much higher. The results of the WRAT-4, which Dr. LaVoie noted he "believed to be valid," produced an average score of approximately 81. In the summary and recommendations section of his report, Dr. LaVoie provided the following opinion:

> Testing and assessment results indicate intelligence in the range of mild mental retardation; it is believed this may be an under-estimate. [The Plaintiff] seemed to make a good effort, but her presentation appeared to suggest a higher level of ability. Achievement testing produced an average score (81.25) about 20 points higher than her estimated ability. I believe her true ability is in the borderline range; that is one of the reasons her mild MR [mental retardation] diagnosis is made provisionally.

Dr. LaVoie's report further evinced his doubts as to the extent of the Plaintiff's potential intellectual disability. Dr. LaVoie wrote that he had no reservations about the severity of the Plaintiff's depressive symptoms, and he recommended further mental health services and additional support services. But he also discussed his "doubts about Cassie's inconsistent reports" of hallucinations, sleeplessness, a seizure disorder and "other features of her functioning." Adding to Dr. LaVoie's doubts "was her report that she was to present next week for an SSI evaluation. Her twin sister had been receiving disability payments for many years, and Cassie has recently applied. Others in the family reportedly encouraged her to do this." In his decision, the ALJ wrote that both the Plaintiff's therapist and treating psychologist "noted [the Plaintiff's] tendency toward confusing and contradictory responses to questions, although they posit different motivations."

Under these circumstances, the Court finds that the ALJ appropriately exercised his discretion in assessing the validity of the IQ test results and declining to accept them as

9

valid when determining whether the Plaintiff met the requirements of listing 12.05C. See Hancock, 667 F.3d at 474. The ALJ's decision to reject those IQ scores was not arbitrary and, contrary to the Plaintiff's objection, the ALJ's rationale was clear. The ALJ issued his decision after "careful consideration of all the evidence," and he explicitly addressed the pertinent reports and the relevant evidence found elsewhere in the record. Ultimately, he concluded that the Plaintiff's IQ scores were not valid under listing 12.05C. Therefore, he found that the second prong of the listing 12.05C requirements was not met. This Court must not re-weigh the evidence or substitute its own judgment for that of the ALJ, so long as the ALJ's decision is supported by substantial evidence. Hays, 907 F.2d at 1456.

Furthermore, in order to satisfy the requirements of listing 12.05C, the Plaintiff would need to establish that the ALJ erred in his analysis of both the first and second prongs of the listing. See Hancock, 667 F.3d at 475 ("[E]ven if the ALJ's finding concerning Prong 2 of Listing 12.05C did not rest on substantial evidence, we would still be required to affirm the ALJ's decision if his finding with regard to Prong 1 was based on substantial evidence."). As detailed above, the Court finds that the ALJ did not err in his analysis as to the second prong, concerning the validity of the Plaintiff's IQ scores. The Court also finds the ALJ's conclusion that the Plaintiff did not satisfy the first prong of listing 12.05C was supported by substantial evidence. The Plaintiff failed to make the requisite showing of deficits in adaptive functioning generally.

Deficits in adaptive functioning have been defined as significant limitations in "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." See Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (unpublished) (citing Atkins v.

Virginia, 536 U.S. 304, 309 n.3 (2002) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000))). Here, the ALJ found that the Plaintiff "has a higher level of adaptive functioning than is at first suggested by her intelligence quotient scores." The ALJ's conclusion was supported by evidence of the Plaintiff's "reasonably full range of daily activities." It is apparent from the ALJ's analysis that he reviewed the entire record in reaching this conclusion. The ALJ noted that, at the July 12, 2012 hearing, the Plaintiff testified that she lived by herself for a year, but she had to move in with her sister because she could not live alone due to her severe depression. However, elsewhere in the record there is evidence that the Plaintiff moved in with her sister after the United States Department of Housing and Urban Development stopped offering the Plaintiff a housing subsidy. Additionally, the ALJ found that the Plaintiff was independent in matters of self-care and personal hygiene, and that she was able to shop, prepare meals and socialize to an extent. The Plaintiff testified that she had some trouble shopping because she struggled with calculations and with determining the proper amount of food to buy with her food stamps, but she also testified that she is able to shop by herself and that she understands that purchasing mostly junk food exacerbates her health concerns. Upon reviewing the evidence of the Plaintiff's daily living and social functioning, the ALJ wrote, "In considering [the Plaintiff's] overall credibility, one must not overlook . . . [a] diagnosis of malingering." The ALJ's conclusions that the Plaintiff's mental impairments imposed a mild restriction on her daily living and moderate difficulties with social functioning are consistent with his review of her deficits in adaptive functioning. The ALJ's conclusion that the Plaintiff failed to satisfy the first prong of the listing 12.05C requirements was supported by substantial evidence and the ALJ's rationale was

expressed in the body of his decision.

For the reasons provided above, this Court finds that the ALJ's decision was supported by substantial evidence and that Magistrate Judge Kaull's R&R should be adopted.

## IV. Conclusion

Accordingly, because substantial evidence supported the ALJ's decision and any error on his part was harmless, the Court **OVERRULES** the Plaintiff's objections. Upon review of the above, it is the opinion of this Court that the Report and Recommendation, [ECF 16], should be, and is, hereby **ORDERED ADOPTED**. The Court **ORDERS** that the Defendant's Motion for Summary Judgment, [ECF 14], be **GRANTED** and the Plaintiff's Motion for Summary Judgment, [ECF 13], be **DENIED**. The Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be stricken from this Court's active docket.

Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter a separate order of judgment in favor of the Defendant.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** May 8, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE